IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PLATTE VALLEY BANK, a <br> Nebraska State Bank, <br> <br> Plaintiff, <br> <br> v. <br> <br> TETRA FINANCIAL GROUP, LLC, a <br> Utah Limited Liability <br> Company, and REPUBLIC BANK, <br> INC., a Utah corporation, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br> <br> <br> 8:10CV59 <br> <br> <br> <br> MEMORANDUM OPINION |

## I. INTRODUCTION

This matter is before the Court on the parties' cross-motions for summary judgment (Filing Nos. 104 and 107). The case arises from a series of transactions in which third-party Heggem Construction, Inc. ("HCI") granted a security interest in some of its construction equipment to plaintiff Platte Valley Bank ("PVB") and then purported to transfer ownership of that equipment to defendants Tetra Financial Group, LLC ("TFG") and Republic Bank, Inc. ("Republic") pursuant to a sale and leaseback agreement. PVB has alleged TFG and Republic are liable to PVB for conversion and for retention of proceeds to which PVB claims it is entitled (Amended Complaint, Filing No. 25, ¶¶ 14, 18). The Court finds PVB's motion should be denied, and TFG and Republic's motion should be granted.

## II.  FACTS

HCI is a Wyoming corporation with its principal place of business in Scotts Bluff, Nebraska.  PVB is a Nebraska State Banking Corporation.  HCI was a long-term borrower from PVB and has at all relevant times been indebted to PVB for amounts in excess of $1,000,000.00.  On March 13, 2002, HCI entered into a commercial security agreement with PVB ("PVB Security Agreement").  Pursuant to the PVB Security Agreement, HCI granted to PVB a security interest in "[a]ll equipment[,] including . . . machinery, vehicles . . . manufacturing equipment . . . parts, and tools."  After executing the PVB Security Agreement, PVB filed a financing statement and continuation statement with the State of Wyoming.

TFG is a Utah limited liability company with its members all residing in Utah and with its principal place of business in Utah.  Republic is a Utah corporation with its principal place of business in Utah.  Sometime between late 2007 and early 2008, HCI began discussions with TFG about potential lease financing options.  From these discussions, the parties tentatively agreed HCI would sell twenty-two pieces of construction equipment and vehicles ("HCI Equipment") to TFG, and TFG would concurrently lease the HCI Equipment back to HCI ("Sale and Leaseback Agreement").  HCI and TFG agreed to value the HCI Equipment at $565,430.00.  Because of the credit risk posed by

HCI, the parties agreed to deposit the sale amount from the HCI Equipment into an account to provide security for the transaction ("Holdback Amount").  Although HCI desired to have the Holdback Amount placed in a certificate of deposit, TFG required the Holdback Amount be placed in a "ban control account" with Republic, TFG's banking partner.

After completing the initial negotiations for the Sale and Leaseback Agreement, TFG began to conduct due diligence regarding HCI's financial performance.  TFG contacted PVB for information, and PVB responded that HCI was in good standing on its obligations to PVB.  TFG then sent a package of transaction documents to HCI on October 7, 2008.  The documents included a subordination agreement for PVB to sign, which would have subordinated PVB's security interest in the HCI Equipment to TFG's interests.  However, upon being presented with the subordination agreement, PVB refused to sign it.  Because PVB refused to subordinate it security interest in the HCI Equipment, TFG and HCI agreed to modify the proposed Sale and Leaseback Agreement so that TFG's interest in the HCI Equipment would be subordinate to PVB.  Ultimately, in December 2008, the parties executed the Sale and Leaseback Agreement, a Master Lease Agreement, a lease schedule ("Lease Schedule No. 1"), and a security agreement ("TFG Security Agreement").

Under the Sale and Leaseback Agreement, HCI agreed to sell and TFG agreed to purchase the HCI Equipment. TFG in turn agreed to lease the HCI Equipment back to HCI. The Sale and Leaseback Agreement further provided:

> Buyer and Seller agree that the purchase price of the [HCI] Equipment is $565,430.00, which shall be payable to [HCI] pursuant to the terms and conditions of this Agreement, the Master Lease and the Schedule. [TFG] shall hold back $565,430.00 (the "Holdback Amount") which shall be used as a security deposit pursuant to the [TFG Security Agreement] dated October 2, 2008 and subject to the terms of this Agreement and the Lease. [TFG] shall pay the Holdback Amount to [HCI] upon the expiration of the "Base Term" (as that term is defined in the schedule) and any extensions thereof so long as [HCI] has complied with all, and is not in default under any, of the terms and conditions of the Lease.

The Sale and Leaseback Agreement also provided that the Holdback Amount would be maintained in an interest bearing account at Republic. Under Lease Schedule No. 1, the base lease term was to be 60 months and the "Total Leased Property Cost" was $565,430.00. Lease Schedule No. 1 also provided for the Holdback Amount of 100% of the Total Leased Property Cost, which was to be held "in an instrument acceptable to [TFG] at Republic Bank." Lease Schedule No. 1 further provided "[a]s additional security for the financing provided hereunder, [HCI] hereby grants to

[TFG] a security interest in all assets of [HCI], however described; which security interest shall be junior in priority only to the security interest held by [PVB], which [TFG] hereby acknowledges."  Finally, in the TFG Security Agreement, HCI granted a security interest in the Holdback Amount to TFG.

On December 30, 2008, after the execution of the Sale and Leaseback Agreement, Tetra assigned its interest in the HCI Equipment to Republic, pursuant to a "Sales and Assignment Agreement."  The Sales and Assignment Agreement provided that TFG would sell to Republic the HCI Equipment and stream of lease payment due to TFG under the Sale and Leaseback Agreement.  However, the Sales and Assignment Agreement stated TFG would continue to manage the HCI lease.

Thereafter, on January 2, 2009, Republic opened a ban control account for the Holdback Amount.  Although HCI's name and corporate identification number were used to identify the ban control account, HCI did not participate in the process of opening the account and could not access or withdraw funds from the account.  Republic then transferred $555,899.00 of its funds into the ban control account.  TFG also transferred $9,531.00 of its own money into the ban control account, for a total of $565,430.00 in the account.  At all relevant times, Republic possessed and controlled the ban control account.  With the Sale and Leaseback Agreement consummated, HCI continued to possess the

HCI Equipment in connection with its construction business. There is no evidence indicating that HCI ever received any money pursuant to the Sale and Leaseback Agreement.

Soon after entering the Sale and Leaseback Agreement, in March 2009, HCI encountered financial difficulties and defaulted on its obligations to PVB and to TFG and Republic. On June 10, 2009,[1] Republic applied the security deposit funds against HCI's liability under the Sale and Leaseback Agreement. On June 29, 2009, PVB contacted TFG and Republic in a letter in which PVB advised defendants that PVB was claiming an interest in the Holdback Amount as "proceeds of the sale." PVB and HCI negotiated through the remainder of 2009, attempting to find a way for HCI to meet its obligations and to stay in business. In early 2010, however, a decision was made to liquidate HCI's assets so that HCI could pay down its indebtedness to PVB. PVB took possession of the HCI Equipment, liquidated it, and used the proceeds to reduce HCI's indebtedness to PVB.

### III.  STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the

---

[1] Defendants' statement of material facts and the Affidavit of Mark Carpenter indicate Republic applied the security deposit funds against HCI's liability under the lease on June 10, 2010 (Defendants' Brief Supporting Summary Judgment, Filing No. 108, ¶ 36; Affidavit of Mark Carpenter, Filing No. 118-1, Exhibit 4, ¶ 10). The Court interprets these provisions as typographical errors and assumes this event took place on June 10, 2009.

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is not appropriate if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248. A material issue is genuine if it has any real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). If the plaintiff cannot support each essential element of his claim, summary judgment will be granted because a complete failure of proof regarding an essential element necessarily renders other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## IV. ANALYSIS

PVB has alleged that TFG and Republic are liable to PVB for conversion of the HCI Equipment and the Holdback Amount and that PVB is entitled to have the Holdback Amount turned over to it as proceeds from the sale of the HCI Equipment from HCI to TFG and Republic. TFG and Republic counter no conversion of the HCI Equipment took place, as PVB was allowed to repossess the HCI Equipment upon HCI's default, and the Holdback Amount does not constitute cash proceeds to which PVB is entitled.

A conversion occurs when there is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A(1) (defining a conversion); *cf. Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 975 (Wyo. 1994) ("Conversion is defined as any distinct act by dominion wrongfully executed over one's property in denial of his right or inconsistent with it." (internal quotation omitted)); *Polley v. Shoemaker*, 201 Neb. 91, 95, 266 N.W.2d 222, 225 (1978) (defining a conversion as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein," and recognizing the Restatement's definition); *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958) ("A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.").[2]

---

[2] A potential choice of law issue exists, which could result in the application of either Nebraska, Utah, or Wyoming law. The first step in determining which states law to apply is to determine if a true conflict exists between the laws of the different states. *Christian v. Smith*, 276 Neb. 867, 877, 759 N.W.2d 447, 458 (2008). The Court finds no substantive difference between the applicable laws of Nebraska, Utah, and Wyoming regarding the issues in this case. All three states define conversion in a similar manner, and all three states have adopted the revised Article 9 of the Uniform Commercial Code. *See* Neb. Rev. Stat. U.C.C. § 9-101 et seq.; Utah Code Ann. § 70A-9a-101 et seq.; Wyo. Stat. Ann. § 34.1-9-101 et seq.

To establish a conversion claim, a plaintiff must demonstrate:

> (1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property.

*Kenyon v. Abel*, 36 P.3d 1161, 1165 (Wyo. 2001). An action for conversion may be brought when dominion or control is exercised, inconsistent with a secured party's rights, over property that is subject to a security interest. *Ag Servs. of America, Inc. v. Empfield*, 255 Neb. 957, 960, 587 N.W.2d 871, 873 (1999). A conversion action is typically confined to "major interferences" with the plaintiff's rights in the property, which are "so serious, so important," that a forced judicial sale to the defendant is justified. *Mason v. Schumacher*, 231 Neb. 929, 944, 439 N.W.2d 61, 71 (1989) (internal quotation omitted).

**A.   The HCI Equipment**

To the extent PVB argues TFG and Republic are liable to PVB for conversion of the HCI Equipment, this claim must fail.

Although HCI "sold" the HCI Equipment to TFG (which TFG later assigned to Republic), this transfer did not deny PVB any right it possessed in the HCI Equipment.  TFG and Republic took ownership in the HCI Equipment subject to PVB's security interest.  When HCI defaulted on its obligations to PVB, PVB requested that TFG and Republic transfer ownership of the HCI Equipment to PVB pursuant to PVB's senior security interest.  TFG and Republic did so, and PVB took possession of the HCI Equipment.  TFG and Republic's ownership of the HCI Equipment did not deny PVB its rights to use and enjoy the HCI Equipment, and they did not refuse to return the HCI Equipment upon PVB's demand.  *Kenyon*, 36 P.3d at 1165.  To the extent it can be argued that TFG and Republic interfered with PVB's rights in the HCI Equipment, such interference was minimal and was not "so serious, so important," so as to require a forced judicial sale.  *Mason*, 231 Neb. at 944, 439 N.W.2d at 71.  Thus, PVB cannot maintain a claim of conversion with regard to the HCI Equipment.

**B.   The Holdback Amount**

Whether TFG and Republic converted the Holdback Amount cannot be so easily disposed.  In order to determine whether a conversion has taken place, it must first be established whether PVB had legal interest in the Holdback Amount.  *See Kenyon*, 36 P.3d at 1165.

PVB claims an interest in the Holdback Amount pursuant to the security interest it held in the HCI Equipment. Under section 9-315(a) of the Uniform Commercial Code, "a security interest . . . continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest . . .; and a security interest attaches to any identifiable proceeds of collateral." U.C.C. § 9-315(a)(1)-(2). The U.C.C. defines "proceeds" as "whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral; whatever is collected on, or distributed on account of, collateral; rights arising out of collateral. . . ." U.C.C. § 9-102(a)(64)(A)-(C). PVB argues the Holdback Amount is a proceed of the HCI Equipment due to the Sale and Leaseback transaction. PVB maintains its security interest in the HCI Equipment attached to the Holdback Amount when the HCI Equipment was sold to TFG pursuant to the Sale and Leaseback Agreement.

Whether PVB's security interest attached to the Holdback Amount is unclear. However, the Court need not decide this issue because even if it is assumed PVB's security interest attached, PVB would still not be entitled to the Holdback Amount. Rather, PVB's security interest would be junior in priority to the security interest Republic and TFG held in the Holdback Amount. Section 9-327 of the U.C.C. governs priority

determinations when there are conflicting security interests in the same deposit account. Under section 9-327, "[a] security interest held by a secured party having control of a deposit account under section 9-104 has priority over a conflicting security interest held by a secured party that does not have control." U.C.C. § 9-327(1). "Control" occurs when "(1) the secured party is the bank with which the deposit account is maintained; . . . or (3) the secured party becomes the bank's customer with respect to the deposit account." U.C.C. § 9-104(1), (3). "[A] security interest held by the bank with which the deposit account is maintained has priority over a conflicting security interest held by another secured party." § 9-327(3).

In this case, TFG and Republic's security interest in the Holdback Amount has priority over PVB's security interest in the Holdback Amount. The Holdback Amount, as a "demand, time, savings, passbook, or similar account maintained with a bank," is a "deposit account." U.C.C. § 102-(a)(29). TFG (as Republic's customer) and Republic had control over the Holdback Amount. Because TFG and Republic had control over the Holdback Amount, their security interest in the Holdback Amount is superior to PVB's security interest. *See Joseph Stephens & Co. v. Cikanek*, 588 F. Supp. 2d 870, 876 (N.D. Ill. 2008) ("In effect, then, a depository bank's security interest is usually superior to any

-12-

other secured interest in a deposit account-unless it specifically agrees to recognize the interest.").

A secured party that holds a security interest in a deposit account by control is permitted to apply the balance of the deposit account against the obligation the deposit account secures. U.C.C. § 9-607(a)(4); *Myers v. Christensen*, 278 Neb. 989, 994, 776 N.W.2d 201, 206 (2009); *Fifth Third Bank v. Peoples Nat'l Bank*, 929 N.E.2d 210, 215 (Ind. Ct. App. 2010). That is what occurred in this case. After HCI defaulted on its obligation under the Sale and Leaseback Agreement, Republic and TFG applied the Holdback Amount against HCI's indebtedness to them. TFG and Republic, as holders of a superior security interest in the Holdback Amount, were not required to defer to PVB's alleged security interest in the Holdback Amount. Accordingly, even if it is assumed the Holdback Amount was a proceed of the sale of the HCI Equipment, PVB did not hold legal title in the Holdback Amount, and no conversion occurred. *See Kenyon*, 36 P.3d at 1165.

## V. CONCLUSION

Because defendants did not convert the HCI Equipment or the Holdback Amount from PVB, PVB's two causes of action must fail. The Court will deny PVB's motion for summary judgment (Filing No. 104) and will grant TFG and Republic's motion for

summary judgment (Filing No. 107).  A separate order and judgment will be entered in accordance with this memorandum opinion.

DATED this 31st day of January, 2011.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court